**DAVIS LAW GROUP, PLC**
  D. Jason Davis (State Bar No. 193225)
17383 W. Sunset Blvd., Suite A380
Pacific Palisades, California 90272
Telephone:  (424) 256-0070
Facsimile:   (424) 256-7950
jdavis@dlglawcorp.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN HERZFELD, an individual, | CASE NO.: 2:18-CV-09784-ODW-SS |
| Plaintiff, | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| vs. | |
| TEVA PHARMACEUTICALS USA, INC. OMNIBUS WELFARE PLAN; QUANTUM HEALTH, INC. WHICH WILL DO BUSINESS IN CALIFORNIA AS COORDINATED HEALTHCARE; MERITAIN HEALTH, INC; MCMC, LLC; and AETNA LIFE INSURANCE CO. | Date:      November 18, 2019<br>Time:      1:30 p.m.<br>Ctrm:     5D<br>Hon.:      Otis D. Wright II |
| Defendants. | |

**TO THE HONORABLE COURT AND TO ALL PARTIES:**

PLEASE TAKE NOTICE that on November 18, 2019, at 1:30 p.m. or as soon thereafter as this matter may be heard in the above-titled Court located at 350 West 1st Street, Los Angeles, California, 90012, Plaintiff John Herzfeld will move this

Court, pursuant Fed. R. Civ. P. 59(e), Fed. R. Civ. P. 60(b) and Civil L.R. 7-18, to reconsider its decision granting Defendant's Motion to Dismiss with prejudice (ECF No. 34). Specifically, the Court should reconsider its conclusion that Defendant MCMC, LLC is not a fiduciary in light of a recent ruling in the Northern District of California that was decided after MCMC's Motion to Dismiss was fully briefed or, in the alternative, the Court should reconsider its decision to dismiss the case with prejudice, rather than with leave to amend.

This motion is made upon this Notice, the attached Memorandum of Points and Authorities, the Declaration of D. Jason Davis, documents already on record with the Court in this action, and upon such oral argument as may be presented at the hearing of this motion.

This motion is made following the conference of counsel which occurred via e-mail on September 4, September 24 and October 1, 2019.

DATED:  October 21, 2019         **DAVIS LAW GROUP, PLC**


By:_____/s/ D. Jason Davis_____
            D. Jason Davis
Attorney for Plaintiff

# **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................3

II.     FACTS ALLEGED IN THE COMPLAINT....................................................4

III.    ARGUMENT ...............................................................................................7

        A.   LEGAL STANDARD ..........................................................................7

        B.   THE RECENT RULING IN THE NORTHERN
             DISTRICT OF CALIFORNIA HELD THAT IRO'S
             ARE FIDUCIARIES............................................................................9

        C.   ANY PERSON WHO HAS THE DISCRETION
             TO GRANT OR DENY CLAIMS IS A
             FIDUCIARY .....................................................................................12

             1.   No Party Exercises Any Discretion Over an
                  IRO or Its Determination During an External
                  Review ....................................................................................15

        D.   THE COURT FAILED TO CONSIDER
             MATERIAL FACTS ALLEGED IN THE
             COMPLAINT AND MISUNDERSTOOD THE
             EXTERNAL REVIEW PROCESS.......................................................17

        E.   THE COURT DID NOT CONSIDER WHETHER
             A CLAIM COULD BE ASSERTED AGAINST
             MCMC FOR NON-FIDUCIARY LIABILITY ...................................20

IV.     CONCLUSION ...........................................................................................21

# TABLE OF AUTHORITIES

## CASES

*389 Orange St. Partners v. Arnold,*
    179 F.3d 656 (9th Cir.1999) ..................................................................7

*Aetna Life Ins. Co. v. Bayona*,
    223 F.3d 1030 (9th Cir. 2000) ..............................................................13

*Am. Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life Assur. Soc. of the U.S.,*
    841 F.2d 658 (5th Cir. 1988) ................................................................14

*Am. Ironworks & Erectors Inc. v. N. Am. Constr. Corp.,*
    248 F.3d 892 (9th Cir. 2001) ..................................................................8

*Big Bear Lodging Assoc. v. Snow Summit,*
    182 F.3d 1096 (9th Cir. 1999) ..............................................................17

*Daghlian v. DeVry Univ., Inc.,*
    582 F. Supp. 2d 1231 (C.D. Cal. 2007) ..................................................8

*Daniels v. Bursey,*
    313 F. Supp. 2d 790 (N.D. Ill. 2004) ...................................................21

*Del Prete v. Magellan Behavioral Health, Inc.,*
    112 F.Supp.3d 942 (N.D. Cal. 2015) ..............................................10, 11

*Cyr v. Reliance Standard Life Ins. Co.,*
    642 F.3d 1202 (9th Cir. 2011) ..............................................................20

*Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.,*
    530 U.S. 238 (2000) ..............................................................................20

*Josef K. v. California Physicians' Service,*
    No. 18-CV-06385-YGR, 2019 WL 2342245 (N.D. Cal. June 3, 2019) ....8, 10, 11, 12

*Keith v. Volpe,*
    858 F.2d 467 (9th Cir. 1988) ................................................................18

*King v. Blue Cross & Blue Shield of Illinois,*
    871 F.3d 730 (9th Cir. 2017) ................................................................13

*Kodes v. Warren Corp.,*
    24 F. Supp. 2d 93 (D. Mass. 1998) .......................................................14

*Mahon v. United States,*
    795 F. Supp. 2d 149 (D. Mass. 2011) ...................................................10

*Maryln Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
    571 F.3d 873 (9th Cir. 2009) ................................................................. 7

*McDowell v. Calderon*,
    197 F.3d 1253 (9th Cir. 1999) ............................................................... 7

*McQuillion v. Schwarzenegger*,
    369 F.3d 1091 (9th Cir. 2004) ......................................................... 17, 18

*Pac. Shores Hosp. v. United Behavioral Health*,
    764 F.3d 1030 (9th Cir. 2014) ............................................................. 14

*Pacificare Inc. v. Martin*,
    34 F.3d 834 (9th Cir. 1994) ................................................................. 13

*Reich v. Lancaster*,
    55 F.3d 1034 (5th Cir. 1995) ............................................................... 14

Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.,
    5 F.3d 1255 (9th Cir. 1993) ................................................................... 8

Smith v. Evans,
    853 F.2d 155 (3d Cir.1988) ................................................................... 7

United States v. Fiorelli,
    337 F.3d 282 (3d Cir. 2003) .................................................................. 7

*William Inglis & Sons Baking Co. v. ITT Continental Baking Co.*,
    668 F.2d 1014, 1057 (9th Cir. 1982) ................................................... 18

## **STATUTES AND REGULATIONS**

29 C.F.R. § 2590.715-2719 ............................................................... 9, 16

29 C.F.R. § 2590.715-2719(a)(2)(6) ..................................................... 16

29 C.F.R. § 2590.715-2719(d)(2)(iii)(A)(1) .......................................... 16

29 C.F.R. § 2590.715-2719(d)(2)(iii)(B)(5) ...................................... 15, 16

29 C.F.R. § 2590.715-2719(d)(2)(iii)(B)(7)(v) ................................. 15, 16

29 C.F.R. § 2590.715-2719(d)(2)(iii)(B)(7)(viii) .............................. 10, 16

45 C.F.R. § 147.136 ............................................................................. 9

45 C.F.R. § 147.136 (a)(2)(6) .............................................................. 11

45 C.F.R. § 147.136 (d)(2)(iii)(A)(1) ................................................... 16

45 C.F.R. § 147.136(d)(2)(iii)(B)(5) ................................................................15

45 C.F.R. § 147.136 (d)(2)(iii)(B)(7)(v) ..................................................15, 16

29 U.S.C. § 1002(21)(A) ....................................................................... 11, 14

29 U.S.C. §1132(a)(3) .............................................................................. 10

ERISA § 502(a)(3) ...........................................................................4, 20, 21

Fed R Civ P 8(a)(2) .................................................................................. 8

Fed R Civ P 59(e) ................................................................................... 7

Fed R Civ P 60(b) ............................................................................... 7, 8

## **LOCAL RULES**

Civil L.R. 7-18 ......................................................................................... 8

# I.   __INTRODUCTION__

The Court should reconsider its ruling granting Defendant MCMC, LLC's ("MCMC") Motion to Dismiss without leave to amend.  A recent ruling in the Northern District of California that was issued after the Parties briefed the Motion to Dismiss found that an independent medical review organization ("IRO") that conducted an external review under ERISA was a functional fiduciary.  In that case, as here, it was alleged that the IRO's external review was binding on both the insurer and claimant and that the IRO had authority to interpret care guidelines and apply definitions contained in the plan documents to reach its conclusion.  The Court should reconsider its ruling and analysis regarding whether MCMC is a fiduciary in light of the recent ruling.

In addition, the Court erred in its reading of the allegations of the Complaint. The Court believed erroneously that the Complaint only alleged that the final decision to approve or deny benefits was conducted by Defendant Quantum Health, Inc. Which Will Do Business In California As Coordinated Healthcare ("Quantum").  The Complaint alleged that the final decision to approve or deny benefits was made during the external review conducted by MCMC.  Defendant Teva Pharmaceuticals USA, Inc. Omnibus Welfare Plan (the "Plan") and Plaintiff were bound by MCMC's decision.  To the extent the Court found that these allegations were insufficient, it erred by not allowing Plaintiff the opportunity to amend the Complaint to allege more detailed allegations regarding the role of the IRO under ERISA and the facts surrounding MCMC's decision.

The Court also misread the regulations governing the external review process and does not appear to have considered the allegations in the Complaint concerning the numerous violations of those regulations by MCMC. The Court believed that the Plan exercised discretion over the IRO at all times, which is contrary to the requirement under the regulations that the review is conducted on a de novo basis, independent of prior decisions.  It is also contrary to the requirement that the

external reviewer be impartial and unbiased.  Furthermore, it was error for the Court
to conclude that only an insurance company can be a fiduciary when it has the
authority or discretion to approve or deny claims.  Case authority demonstrates that
numerous other persons and entities act as fiduciaries when they have the authority
or discretion to approve or deny claims

Under the Court's reasoning, MCMC could collude with a plan or an insurer
to deny a participant or beneficiary's claims in exchange for a monetary benefit and
plan participants or beneficiaries would have no recourse against MCMC.
Additionally, MCMC could violate the federal regulations governing the external
review process, as MCMC did here, and proceed in any manner it chose without
consequence. It cannot be that ERISA allows IRO's to act with impunity.

Lastly, the Court did not consider whether the Complaint could be amended
to assert nonfiduciary liability against MCMC under ERISA § 502(a)(3).

## II.    FACTS ALLEGED IN THE COMPLAINT

Plaintiff John Herzfeld ("Jack") sought pre-authorization for a myoelectric
elbow-wrist orthoses ("EWO") manufactured by Myomo, Inc. from his father's
employer sponsored health insurance plan. An EWO is a medical device that
attaches to the arm and restores function to the arms of an individual who can no
longer move or use their arms without assistance.  Durable Medical Equipment,
such as the MyoPro, as defined under the Plan, is a "Covered Expense."
(Complaint, ¶¶ 40-43) The Plan, however, excludes coverage for expenses for,
among other things, devices that are considered "Experimental and/or
Investigational."  (Complaint, ¶ 44)

Quantum denied Jack's claim for coverage of the MyoPro and his two
subsequent internal appeals. (Complaint, ¶¶ 57-72).  Thereafter, Jack sought an
external review of the adverse benefit determination from MCMC.  MCMC denied
Jack's claim for benefits based on a flawed review process.

MCMC is an IRO "that conducts external reviews of benefit denials by health

insurance companies and employment benefit plans." (Complaint, ¶ 54) The external review determination is binding on both the Plan and the claimant and is the last available review of an adverse determination by the Plan. (Complaint, ¶¶ 55-56)

Quantum assigned Jack's external appeal to its self-selected, contracted IRO, Defendant MCMC. (Complaint, ¶ 75) MCMC prides itself on helping its "clients save over $200 million in abusive pre-pay and post-pay claims in the past four years." (Complaint, ¶ 75) MCMC denied Jack's external appeal by letter dated April 4, 2018, on the ground that the MyoPro was "experimental and investigational," stating as follows:

Review Question:

Is the requested service a Plan/Benefit exclusion as defined by the Summary Plan Description?

Yes. The requested service is a Plan/Benefit exclusion as defined by the Summary Plan Description.

The Plan defines Experimental and/or Investigational as:

1.    If the drug or device cannot be lawfully marketed without approval of the U.S. Food and Drug Administration (FDA) and approval for marketing has not been given at the time the drug or device is furnished then it is deemed to be Experimental and/or Investigational; or

2.    If the drug, device, medical treatment or procedure, or the patient informed consent document utilizing the drug, device, medical treatment or procedure, was reviewed and approved by the treating facility's Institutional Review Board or other body serving a similar function, or if federal law requires such review or approval, then it is deemed to be Experimental and/or Investigational; or

3.    Reliable evidence shows that the drug, device, medical treatment or procedure is the subject of on-going Phase I or Phase II clinical trials, or is the subject of research, Experimental, study or Investigational arm of an ongoing Phase III clinical trials, or is otherwise under study to determine its maximum tolerated dose, its toxicity, its safety, its efficacy or its efficacy as compared with a standard means of treatment or diagnosis, then it is deemed to be Experimental and/or Investigational; or

4.    Reliable evidence shows that the prevailing opinion among experts regarding the drug, device, medical treatment or procedure is that further studies or clinical trials are necessary to determine its maximum tolerated dose, its toxicity, its safety, its efficacy or its efficacy as compared with a standard means of treatment or diagnosis, then it is deemed to be Experimental and/or Investigational.

The medical literature regarding this type of device is limited to preclinical work, developmental work and small anecdotal reports reporting potential for benefit (e.g., Ren Y, et al., 2013; Maciejasz P, et al., 2014; Proietti T, et al., 2016; Peters HT, et al., 2017), some of which is industry-sponsored work. It is not well known whether users will adopt the device for regular functional use in the long-term (i.e., for use beyond the short-term as a novelty device), or if the device itself causes injuries with long-term use (e.g., at the shoulder due to the device's weight). Current commercially available iterations of this type of device remain heavy, bulky, difficult to don/doff (typically using total assist from others), and impractical to use on a regular basis.
Further study is required to determine its efficacy and safety as a health service. The device is not reasonably expected to favorably impact the member's long-term clinical or functional outcomes. It is experimental and investigational and therefore a Plan/Benefit exclusion as defined by the Summary Plan Description.

(Complaint, ¶ 76)

As stated above, MCMC reviewed the Summary Plan Description, interpreted the plan terms, including the definition of "experimental and/or investigational" and made a determination regarding Jack's claim. At the same time MCMC failed to acknowledge, address, or consider the detailed information provided by Jack or his providers, including the many referenced, contemporaneous studies and supporting documentation.  (Complaint, ¶ 77)

The selection of MCMC was flawed in many respects as was the external review conducted by MCMC, including (1) cynically accusing Jack's parents of using the Plan to fund the purchase of the MyoPro, (2) using the same reviewer repeatedly when MCMC conducted an external review of whether the MyoPro is a covered medical expense, (3) failing to understand Jack's medical condition and/or review the claim file competently, including by misstating Jack's medical condition as "cerebral palsy," a brain malformation, when Jack suffers from a genetic condition, (4) failing to adequately identify the Aetna guidelines relied upon, (5) using a medical reviewer who neither demonstrated sufficient experience and knowledge of Jack's medical condition nor the medical device for which he sought coverage, and (6) failing to consider the evidence provided by Jack.  (Complaint, ¶¶ 79-88)

The use of the same reviewer (identified as "Reviewer ID 552) defies the

requirement of impartiality and lack of bias.  Reviewer ID 552 had been used by MCMC to deny at least four claims for coverage of the MyoPro, including Jack's. (Complaint, ¶ 87) Reviewer ID 552 cut and pasted language from his or her prior denials of coverage for the MyoPro, which evidenced a predisposition by MCMC to deny coverage for the device. (Complaint, ¶ 88).  This scheme is how MCMC can boast that it has saved its clients over $200 million in claims over the past four years.  (Complaint, ¶75).

## III.   ARGUMENT

### A.   LEGAL STANDARD

Under Fed. R. Civ. P. 59(e), a party may move to "alter or amend a judgment" when the court has been "presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Maryln Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (citations omitted).  A motion for reconsideration under Rule 59(e) can be filed for almost any reason. "A motion under Rule 59(e) is a 'device to relitigate the original issue' decided by the district court, and used to allege legal error." *United States v. Fiorelli*, 337 F.3d 282, 288 (3d Cir. 2003) *quoting Smith v. Evans*, 853 F.2d 155, 158-159 (3d Cir.1988).

A motion for reconsideration brought under Rule 59(e) may be brought on a number of grounds:

> First, the movant may demonstrate that the motion is necessary to correct manifest errors of law or fact upon which the judgment is based. Second, the motion may be granted so that the moving party may present newly discovered or previously unavailable evidence. Third, the motion will be granted if necessary to prevent manifest injustice.... Fourth, a Rule 59(e) motion may be justified by an intervening change in controlling law.

*McDowell v. Calderon*, 197 F.3d 1253, 1255 n. 1 (9th Cir. 1999); see also, *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir.1999).

Fed. R. Civ. P. 60(b) also sets forth grounds for relief from a final judgment, order, or proceeding, including: (1) "mistake, inadvertence, surprise, or excusable

1   neglect" . . .   or (6) "any other reason that justifies relief."  Fed. R. Civ. P. 60(b);

2   s*ee also Am. Ironworks & Erectors Inc. v. N. Am. Constr. Corp.,* 248 F.3d 892, 899

3   (9th Cir. 2001) *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.,* 5 F.3d 1255,

4   1263 (9th Cir. 1993)

5          This local rules also set forth grounds to move for reconsideration: "(a) a

6   material difference in fact or law from that presented to the court before such

7   decision that in the exercise of reasonable diligence could not have been known to

8   the party moving for reconsideration at the time of such decision, or (b) the

9   emergence of new material facts or a change of law occurring after the time of such

10  decision, or (c) a manifest showing of a failure to consider material facts presented

11  to the Court before such decision." Civil L.R. 7-18. "Whether to grant a motion for

12  reconsideration under Local Rule 7-18 is a matter within the court's discretion."

13  *Daghlian v. DeVry Univ., Inc*., 582 F. Supp. 2d 1231, 1251 (C.D. Cal. 2007).

14         Here, there was a "material difference in . . . law from that presented to the

15  court before such decision that in the exercise of reasonable diligence could not

16  have been known to the party moving for reconsideration at the time of such

17  decision."  On June 3, 2019, after the Parties had fully briefed MCMC's Motion to

18  Dismiss, Judge Yvonne Gonzalez Rogers, District Court Judge in the Northern

19  District of California, in *Josef K. v. California Physicians' Service*, No. 18-CV-

20  06385-YGR, 2019 WL 2342245 (N.D. Cal. June 3, 2019), determined that another

21  IRO was a functional fiduciary because its external review of a health insurer's

22  denial of benefits showed that it exercised "final authority" over whether the

23  plaintiff's claim would be paid or not.

24         Also, this Court's decision failed to consider material facts alleged in the

25  Complaint.  The Court determined erroneously that Quantum made the final

26  decision to deny benefits. Quantum denied Jack's claim for benefits and two internal

27  appeals.  It did not make the final decision to deny benefits. The subsequent review

28  by MCMC was characterized, not as a benefits decision but rather a mere review of

what Quantum had done, which is not the function of an external review. Paragraphs 54-56 of the Complaint alleged that the external review conducted by MCMC was binding on both the Plan and Jack.  In addition, the Court may have been mistaken about procedures of the external review process under ERISA.  29 CFR § 2590.715-2719[1] sets forth the procedures and requirements for an external review under ERISA.  The IRO that conducts the external review does so on a de novo basis, independent of the decisions of the internal review, and its determination is binding on the Plan and the claimant, such that a reversal of the Plan's denial of benefits compels the Plan to cover and pay the benefit. The Plan has no discretion to override the IRO's determination. In addition, it does not appear that the Court considered the fact that MCMC has used the same reviewer repeatedly to determine whether the MyoPro is experimental and/or investigational.  The MCMC reviewer has denied coverage of the MyoPro on every occasion he or she conducted an external review and merely "cut and pasted" their prior reviews. The Court either did not consider the effect of MCMC's malfeasance or implicitly decided that MCMC is immune from suit for its conduct that violates the applicable federal regulations and ERISA statutes.

If the Court found the pleading deficient in that regard, additional facts can be alleged to resolve the Court's concerns. Thus, the Court improperly dismissed the case without giving Jack an opportunity to amend.

### B.   THE RECENT RULING IN THE NORTHERN DISTRICT OF CALIFORNIA HELD THAT IRO'S ARE FIDUCIARIES

The Court should consider a recent ruling in the Northern District of California that was decided after Jack had filed his Opposition to the Motion to Dismiss.  Jack did not have the opportunity to bring this ruling to the Court's attention when Jack filed his Opposition.

---

[1] The Parties cited to 45 CFR § 147.136, which contains identical language.

In *Mahon v. United States*, 795 F. Supp. 2d 149 (D. Mass. 2011), the plaintiff received a contract that was central his claims from the defendant after the plaintiff had filed his opposition to the defendant's motion to dismiss.  *Mahon,* 795 F. Supp. 2d at 152.  The defendant argued that the plaintiff should have filed a motion for leave to file additional briefing.  The district court rejected the defendant's argument: "[t]he fact that the United States did not produce the document until after the opposition was filed ought not be held against Mahon." *Id.*  Similarly, *Josef K. v. California Physicians' Service*, No. 18-CV-06385-YGR, 2019 WL 2342245 (N.D. Cal. June 3, 2019) was decided almost four months after Jack filed his Opposition. Thereafter, the Court took the matter under submission without allowing Jack to present oral argument at a hearing on MCMC's Motion to Dismiss.  Jack had no reason to conduct additional research while waiting for the Court's ruling and could not have discovered the additional case law.

Because *Josef K.* was decided after briefing on MCMC's Motion to Dismiss was completed by both sides, there was "a material difference in  . . . law from that presented to the court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision." L.R. 7-18.

In *Josef K.,* the court concluded that an IRO was subject to a breach of fiduciary duty claim under 29 U.S.C. 1132(a)(3) based on an external review it conducted of a denial of benefits by an ERISA-governed employee welfare benefit plan.

The plaintiffs, a plan beneficiary and her father, submitted a claim for benefits under the father's ERISA-governed employee welfare benefit plan for treatment that the daughter had received at two mental health treatment programs. *Josef K.,* 2019 WL 2342245 at *1. The plan, through Blue Shield, denied the claim and the appeal of the denial. *Id.* Thereafter, the plaintiffs sought an external review of the denial of benefits. Maximus Federal Services, Inc. ("Maximus") performed the external

review. *Id.* Maximus determined that the daughter's treatment was not medically necessary, upholding Blue Shield's denial of the claim. *Id.* The plaintiffs contended that Maximus failed to consider the evidence submitted in support of the IMR, mischaracterized the plaintiff's condition and medical history, and conducted an insufficient review. "Plaintiffs allege that but for Maximus' insufficient review, and consequently, its determination to uphold the claim denial, Blue Shield would have covered E.K.'s treatment." *Josef K. v. California Physicians' Service*, No. 18-CV-06385-YGR, 2019 WL 2342245, at \*2 (N.D. Cal. June 3, 2019)

Judge Rogers analyzed whether Maximus was a "functional fiduciary" because it was not a named fiduciary. Judge Rogers stated that:

> [a] party not named in a plan becomes a fiduciary if:
> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any control respecting management or disposition of its assets,
> (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or
> (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

*Josef K.,* 2019 WL 2342245, at \*6, citing 29 U.S.C. § 1002(21)(A). Judge Rogers, following Ninth Circuit precedent, further noted that:

> although fiduciary status does not attach to a party who 'merely perform[s] ministerial duties or processes claims,' a party may qualify as a fiduciary 'if it has the authority to grant, deny, or review denied claims.' (Citation.). The central inquiry when determining whether a party is a functional fiduciary is whether it was acting as an ERISA fiduciary 'when taking the action subject to complaint.' (Citation.)

*Josef K.,* 2019 WL 2342245, at \*6.

The plaintiffs argued Maximus "exercised discretionary authority and control over the disposition of Plan assets to plaintiffs," while Maximus argued it was only providing an external review. *Josef K.,* 2019 WL 2342245, at \*6. Judge Rogers found *Del Prete v. Magellan Behavioral Health, Inc.,* 112 F. Supp. 3d 942 (N.D.

Cal. 2015) instructive.  Furthermore, she concluded that:

> a reasonable reading of these allegations is that Maximus exercised significant discretion in reaching its determination regarding medical necessity, including in construing terms like 'safe,' 'effective,' and 'appropriate.' Indeed, plaintiffs allege that Maximus 'had the authority to interpret level of care guidelines and apply a definition of Medical Necessity' in reaching its conclusions.

*Id. at* \*7.  Judge Rogers also found that Maximus had "final authority" to decide the plaintiffs' claim and that the decision was binding on Blue Shield just as it was on the plaintiffs.  *Id.* at \*7-8.  Accordingly, the plaintiffs were found to have alleged sufficient facts to claim Maximus was a fiduciary under ERISA.

Here, the facts and circumstances are almost identical, as well as the allegations regarding the IRO and its conduct.  While Maximus made a determination of medical necessity, MCMC made a determination whether the Myomo MyoPro was "experimental and/or investigational" and interpreted the definition of "experimental and/or investigational." In addition, it was alleged that both Maximus and MCMC made a final and binding determination. Had either IRO decided that the claimant was entitled to the benefits sought, the insurer or Plan would have been required to pay the claim.

MCMC made the same determination of benefits that Quantum did during the internal appeal process.  Thus, the Court should have found that MCMC was a functional fiduciary because it exercised considerable discretion and had the authority to approve or deny Jack's claim.

## C.   <u>ANY PERSON WHO HAS THE DISCRETION TO GRANT OR DENY CLAIMS IS A FIDUCIARY</u>

The Court disagreed with Jack's argument that the authority to grant or deny claims conferred fiduciary status on MCMC.  The Court took the position that "the Ninth Circuit does not construe the rule so broadly."  (Order, p. 9, lines 19-20).  The Court believes that the Ninth Circuit has only used the phrase "authority to grant, deny, or review denied claims" in the context of insurers by citing three cases for

support: *King v. Blue Cross & Blue Shield of Illinois*, 871 F.3d 730, 745 (9th Cir. 2017); *Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1033 (9th Cir. 2000), as amended on denial of reh'g and reh'g en banc (Nov. 3, 2000); *Pacificare Inc. v. Martin*, 34 F.3d 834, 837 (9th Cir. 1994). The Court then stated that "[t]hese cases do not stand for the proposition that an IRO lacking discretionary control over the Plan, its assets, or its administration may be found to be an ERISA fiduciary because it performed an external review of a benefit denial." (Order, p. 10, lines 8-11)

First, the Court's finding that the Ninth Circuit only considers insurance companies to have the ability to grant or deny claims as being the universe of potential persons who can be fiduciaries in the position to grant or deny claims is simply an observation of the fiduciaries who were involved in those particular cases. The three opinions cited by the Court involved only insurance companies because they the entities delegated the authority to make benefit determinations in those cases. The Ninth Circuit had no reason to opine about other persons who are in the position to grant or deny claims because these opinions involved the issue whether the particular insurer involved was a fiduciary. The opinions did not address whether other persons with the ability to grant or deny claims could be considered fiduciaries, such as claims administrators, plan administrators, plan sponsors or third party administrators.

There are numerous examples of other persons or entities having the authority to grant or deny claims being held a fiduciary. In the case at bar, Quantum handled the first and second level internal appeals on behalf of the Plan. There can be no dispute that Quantum is a fiduciary. Rather, Quantum is alleged in the Complaint to administer "the Medical Benefit Section of the Plan by acting as a 'Care Coordinator' and handling appeals of medical benefit denials with respect to the Plan." (Complaint ¶10.) The insurance company in the present case is Aetna Life Insurance Company. Aetna has filed a Motion to Dismiss taking the position that it was not a fiduciary.

Plan administrators are routinely considered fiduciaries when they have the discretionary authority to grant or deny medical claims.  See *Am. Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life Assur. Soc. of the U.S.*, 841 F.2d 658, 663 (5th Cir. 1988) ("Holden's authority to grant or deny claims . . . qualifies as discretionary control respecting management of a plan or its assets within the meaning of § 1002(21)(A).); *Reich v. Lancaster*, 55 F.3d 1034, 1047 (5th Cir. 1995) (claims administrator found to be fiduciary because it performed functions similar to plan administrator, including having "the authority and obligation to investigate, process, and approve claims . . .").  Likewise, employer-plan sponsors have been held to be fiduciaries when they exercised discretionary authority to grant or deny claims. See *Kodes v. Warren Corp.*, 24 F. Supp. 2d 93, 102 (D. Mass. 1998) (although third party administrator conducted initial claim review, the employer was held to be a fiduciary because it retained final authority to review and deny claims.)

The Ninth Circuit has found a third-party administrator to be a fiduciary when it had the discretionary authority to grant or deny claims.  In, *Pac. Shores Hosp. v. United Behavioral Health*, 764 F.3d 1030, 1043–44 (9th Cir. 2014), the plan sponsor of an ERISA governed self-funded benefit plan contracted with a third-party claims administrator, UBH, to review claims.  The third-party claims administrator refused to pay for more than three weeks of inpatient hospital treatment for the plaintiff based on mischaracterizations of the plaintiff's medical history and condition. The Ninth Circuit held that the third-party claims administrator owed the plaintiff fiduciary duties and held that "[t]he unhappy fact is that UBH acted as a fiduciary in name only, abusing the discretion with which it had been entrusted." *Pac. Shores Hosp.*,1043–44 (9th Cir. 2014).

As this Court noted, there is no limit to the universe of potential defendants with respect to a claim for breach of fiduciary duty under ERISA.  (Order, p. 6, lines 23-27).  The three Ninth Circuit opinions noted by the Court were decided based on the discretionary authority to grant or deny claims, not on the status of the

defendants as insurance companies. Regardless of a party's title or status, it is the conduct of the party that determines whether that party is a fiduciary.  If only insurance companies could grant or deny claims, then plan administrators, third-party claim administrators and plan sponsors could not be held to be fiduciaries when they exercise discretion to grant or deny claims.

### 1. No Party Exercises Any Discretion Over an IRO or Its Determination During an External Review

The Court made a number of erroneous conclusions regarding MCMC and the applicable regulations governing its conduct, including:

- "None of Herzfeld's allegations support the notion that MCMC had any control over the Plan, its administration, or payment of claims." (Order, p. 6, lines 1-2);

- "MCMC has no control over the actual administration of benefits under the Plan" (Order, p. 6, line 8); and

- "MCMC plainly did not exercise discretionary control over the Plan, possess authority over its assets, or have discretionary authority in its administration." (Order, p. 7, lines 16-17)

The Court also concluded that "the Plan retains discretion over an IRO's determination" citing 45 C.F.R § 147.136(d)(2)(iii)(B)(7)(v).  The Court's belief that the Plan has discretion over the IRO's determination is contrary to the regulations and the explicit requirement that the external review is conducted on a de novo basis.

Both 45 C.F.R § 147.136(d)(2)(iii)(B)(5) and 29 C.F.R. § 2590.715-2719(d)(2)(iii)(B)(5) state:

> The IRO will review all of the information and documents timely received. In reaching a decision, the assigned IRO will review the claim de novo and not be bound by any decisions or conclusions reached during the plan's or issuer's internal claims and appeals process applicable under paragraph (b).

Nowhere in either regulation does it state a plan may retain any discretion over the IRO.  In fact, "[t]he plan or issuer must ensure that the IRO process is not biased and ensures independence."  45 C.F.R § 147.136(d)(2)(iii)(A)(1) and 29 C.F.R. § 2590.715-2719(d)(2)(iii)(A)(1).   If the Plan exercised discretion over the IRO, it would be a violation of the regulations.  The regulations describe the outcome of the external review as the "final external review."  See e.g., 29 C.F.R. § 2590.715-2719(d)(2)(iii)(B)(5).  "A final external review decision means a determination by an independent review organization at the conclusion of an external review." 29 C.F.R. § 2590.715-2719(a)(2)(6). The final external review is binding.  45 C.F.R § 147.136(d)(2)(iii)(B)(7)(v) and 29 C.F.R. § 2590.715-2719(d)(2)(iii)(B)(7)(v).

Here, MCMC was required by the regulations to conduct a de novo review of Jack's claim for benefits.  It was not subject to any discretion by Quantum.  If MCMC decided that Jack's claim was covered, under the Plan, then Quantum and the Plan would be bound by that decision and Jack's claim would have to be paid. MCMC's decision was final and binding. (Complaint, ¶¶ 55 and 56)

29 C.F.R. § 2590.715-2719 sets forth the procedures for the external review process under ERISA.  "The IRO will review all of the information and documents timely received. In reaching a decision, the assigned IRO will review the claim *de novo and not be bound by any decisions or conclusions reached during the plan's or issuer's internal claims and appeals process . . .*" 29 C.F.R. § 2590.715-2719 (d)(2)(iii)(B)(5) (emphasis added).  Moreover, the IRO can reverse the plan or issuer's decision:  "Upon receipt of a notice of a final external review decision reversing the adverse benefit determination or final adverse benefit determination, the plan or issuer immediately must provide coverage or payment (including immediately authorizing care or immediately paying benefits) for the claim." 29 C.F.R. § 2590.715-2719(d)(2)(iii)(B)(7)(viii).  Thus, the IRO has the authority and discretion to interpret the plan documents and all other documents involved in the claim and appeal process along with any other information provided, independent of

any prior decisions, and issue a final decision that is binding on both the plan or issuer and the claimant.  The IRO has the authority and discretion to order the insurer or other fiduciary who denied the claim for coverage to pay the claim for benefits.  Benefit plans and plan fiduciaries have no power or discretion to override that decision.

MCMC engaged in the same review process that the Plan and Quantum engaged.  It makes no sense that Quantum or Meritain, the Claims Fiduciary, could be acting as fiduciaries when they evaluated Jack's claim, but when MCMC conducts the same review and has the same final authority to grant or deny the claim MCMC was not acting as a fiduciary.

Lastly, the Court did not consider whether MCMC violated these regulations and what the effect of that violation has on the claims review process.  For example, the Court did not consider that MCMC was using the same reviewer every time a MyoPro came up for review predisposing the external review to result in a coverage denial.  The Court did not consider whether the use of the same reviewer created a biased review that was neither independent nor impartial.  The decision by MCMC was predetermined by use of the same reviewer and ERISA must provide recourse against an IRO who violates federal regulation.

### D. <u>THE COURT FAILED TO CONSIDER MATERIAL FACTS ALLEGED IN THE COMPLAINT AND MISUNDERSTOOD THE EXTERNAL REVIEW PROCESS</u>

The Court should have allowed Jack the opportunity to amend the Complaint to detail additional allegations regarding the external review process and the statutes and regulations governing the review that MCMC was required to undertake. A complaint should only be dismissed without leave to amend "when it is clear that the complaint cannot be saved by further amendment." *Big Bear Lodging Assoc. v. Snow Summit*, 182 F.3d 1096 (9th Cir. 1999); see also *McQuillion v.*

1   *Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir. 2004). In the interest of judicial

2   economy, the goal is to ensure "as complete an adjudication of the dispute between

3   the parties as possible." *William Inglis & Sons Baking Co. v. ITT Continental*

4   *Baking Co.*, 668 F.2d 1014, 1057 (9th Cir. 1982);  see also *Keith v. Volpe*, 858 F.2d

5   467, 473-74 (9th Cir. 1988) (explaining that Fed. R. Civ. P. 15(d) enables "a court to

6   award complete relief, or more nearly complete relief, in one action, and to avoid

7   the cost, delay and waste of separate actions which must be separately tried and

8   prosecuted").

9         The Court's Order makes no mention of the numerous errors committed by

10   MCMC and its reviewer. (Complaint, ¶¶ 79-88) Mostly notably, the Court does not

11   mention that the external review was biased and predetermined to result in a denial

12   of coverage for Jack because MCMC repeatedly used the same reviewer who denied

13   every external review of the MyoPro he or she conducted and literally cut and

14   pasted their prior decisions into Jack's decision.  (Complaint, ¶¶ 87 and 88).

15         The Complaint alleged facts showing that MCMC violated numerous

16   provisions of the regulation governing external reviews, including the following:

17   •     Exhibited bias and partiality by accusing Jack and his parents of

18         "seeking funding for purchase of the device for the member's use."

19         (Complaint, ¶¶ 79 and 86);

20   •     The external reviewer selected by MCMC, identified as Reviewer ID

21         552, cut and pasted and reused language from other external reviews of

22         the MyoPro he or she authored (Complaint, ¶ 80);

23   •     The external reviewer did not understand Jack's medical condition or

24         did not bother to review Jack's medical records because the external

25         reviewer erroneously stated that Jack suffers from "[u]nspecified

26         infantile cerebral palsy," which is a brain injury or brain malformation

27         that occurs while the brain is developing — before, during, or after

28

birth -- while DMD is a genetic condition that does not involve a brain injury.   (Complaint, ¶ 81);

- The external reviewer relied on an Aetna Clinical Policy Bulletin to support his or her determination while Aetna does not have a Clinical Policy Bulletin that specifically addresses upper limb myoelectric orthoses. (Complaint, ¶ 82);

- MCMC used an external reviewer who did not have requisite qualifications to review the MyoPro and the numerous errors in the written eternal review support the reviewer's lack of qualifications. (Complaint, ¶¶ 83 and 84);

- The unidentified reviewer had no knowledge of the MyoPro because he claimed that the MyoPro device was bulky, heavy and impractical to use, even though the MyoPro weighs little more than 2 pounds and is easily tolerated by an adult such as Jack. (Complaint, ¶ 85); and

- MCMC engaged in a scheme and practice of denying claims for the MyoPro by using the same reviewer who repeatedly denies coverage for the MyoPro rather than randomly assigning different reviewers each time the MyoPro is evaluated. (Complaint, ¶¶ 87 and 88)

This Court essentially ruled that an IRO acts with impunity and is immune from liability regardless of the degree of malfeasance on the part of the IRO when it conducts an external review under ERISA.  Here, MCMC did not conduct an impartial and unbiased review.  Instead, it used the same reviewer who denies coverage for the MyoPro each time he or she conducts an external review involving the MyoPro.  In addition, the reviewer showed bias by accusing Jack's parents of seeking funding for the MyoPro rather than making an unbiased review whether Jack, as an insured, was entitled to coverage for a medical device that would otherwise be a covered expense under the Plan.  MCMC violated a number of the federal regulations governing external reviewers.  Accordingly, MCMC must be

held to the same standards as any other fiduciary that has the authority and discretion to approve or deny claims.

**E.    THE COURT DID NOT CONSIDER WHETHER A CLAIM COULD BE ASSERTED AGAINST MCMC FOR NON-FIDUCIARY LIABILITY**

To the extent the Court determined that a claim could not be asserted against MCMC as a fiduciary, it did not consider whether Jack could assert a claim under ERISA § 502(a)(3) as a non-fiduciary for its participation in the fiduciary breaches committed by Quantum and/or Meritain for use of an IRO that knowingly violated the regulations and acted in a biased manner.

Section 502(a)(3) allows suit to be brought against a non-fiduciary for its role in a violation of ERISA or an ERISA plan.  In *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc*., 530 U.S. 238 (2000), the U.S. Supreme court held that "defendant status under § 502(a)(3) may arise from duties imposed by § 502(a)(3) itself, and hence does not turn on whether the defendant is expressly subject to a duty under one of ERISA's substantive provisions." *Harris Trust & Savings Bank,* 530 U.S. at 247.  A non-fiduciary can be liable where that non-fiduciary knowingly participates in (1) any breach of a fiduciary's fiduciary duties under ERISA or (2) a prohibited transaction under § 406.  *Harris Trust & Savings Bank*, 530 U.S. at 248-249. ("And if the Secretary may bring suit against an "other person" under subsection (a)(5), it follows that a participant, beneficiary, or fiduciary may bring suit against an "other person" under the similarly worded subsection (a)(3)."); see also, *Cyr v. Reliance Standard Life Ins. Co*., 642 F.3d 1202, 1206 (9th Cir. 2011) (recognizing there is no limit with regard to who can be a proper defendant under ERISA.)

To state a claim against a nonfiduciary under Section 502(a)(3):

the plaintiff need not allege that the nonfiduciary himself violated a substantive provision of ERISA. Rather, the plaintiff must allege only

that a fiduciary violated a substantive provision of ERISA and the nonfiduciary knowingly participated in the conduct that constituted the violation.

*Daniels v. Bursey*, 313 F. Supp. 2d 790, 808 (N.D. Ill. 2004).  Here, Jack could and did make allegations that MCMC knowingly acted in a bias and partial manner in its handling of external reviews of the MyoPro by acting in a way that predetermined the outcome of the external review and it was, at a minimum, a breach of fiduciary duty for Quantum and/or Meritain to select MCMC as the IRO. Accordingly, the Court should reconsider whether a claim can be asserted against MCMC under ERISA § 502(a)(3), even if the Court still concludes that an IRO cannot be a fiduciary.

## IV.   CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court reconsider its Order granting Defendant MCMC, LLC's Motion to Dismiss without leave to amend and either deny the Motion to Dismiss, or, in the alternative, allow Plaintiff John Herzfeld leave to amend the Complaint.

DATED: October 21, 2019                    **DAVIS LAW GROUP, PLC**


By:_____/s/ D. Jason Davis_____
                          D. Jason Davis
                          Attorneys for Plaintiff

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION

1

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 21, 2019, I electronically filed the foregoing **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION** with the Clerk of the Court for the United States District Court, Central District of California, by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

By:_____/s/ D. Jason Davis_____
                       D. Jason Davis
          Attorneys for Plaintiff