D. Jason Davis (State Bar No. 193225)
DAVIS LAW GROUP, PLC
401 Wilshire Blvd., 12th Floor
Santa Monica, CA 90401
Telephone: (424) 256-0070
Facsimile: (424) 256-7950
jdavis@dlglawcorp.com

Attorneys for Plaintiff John Herzfeld

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN HERZFELD, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>TEVA PHARMACEUTICALS USA, INC. OMNIBUS WELFARE PLAN; QUANTUM HEALTH, INC. WHICH WILL DO BUSINESS IN CALIFORNIA AS COORDINATED HEALTHCARE; MERITAIN HEALTH, INC; MCMC, LLC; and AETNA LIFE INSURANCE CO.<br><br>Defendants. | CASE NO.: 2:18-CV-09784-ODW-SS<br><br>**PLAINTIFF'S REPLY TO DEFENDANT QUANTUM HEALTH, INC.'S OPPOSITION TO MOTION TO ESTABLISH APPROPRIATE STANDARD OF REVIEW**<br><br>Date: April 27, 2020<br>Time: 1:30 p.m.<br>Ctrm: 5D<br>Hon.: Otis D. Wright II |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Contrary to the misinterpretation by Defendant Quantum Health, Inc. ("Quantum") of the Plan provisions, there is only one fiduciary who has been given discretion to determine claims and benefits, Defendant Meritain Health, Inc. ("Meritain") Nowhere in the plan document is Quantum given discretion to determine claims and benefits. Nor does any provision of the Plan grant discretionary authority to the Plan Administrator, Teva Pharmaceuticals, Inc. ("Teva"). The *De novo* standard of review applies when a benefit determination was made by a person that was not granted discretion to determine claims. Because Quantum, without the discretionary authority to do so, made the initial claim determination and decided both appeals submitted by Plaintiff John Herzfeld ("Jack"), the *de novo* standard of review must be applied.

A conflict of interest exists because Teva is both the Plan Administrator and the Party that must pay any claims. When such a conflict exists and there are other factors present, such as the numerous, egregious violations of Plan procedures that occurred here, a court should apply the *de novo* standard of review. For example, it was a violation of the Plan terms for Quantum to decide Jack's benefits claim and his appeals. The Teva Pharmaceuticals USA, Inc. Omnibus Welfare Plan (the "Plan") does not allow Quantum to make benefit determinations or decide appeals. In addition, the Plan does not authorize it to contract with AllMed to conduct Independent Medical Reviews, which Quantum revealed for the first time in its opposition papers. Moreover, AllMed used pediatricians rather than physicians who specialized in rehabilitation therapy or an orthotist with experience with powered orthotics to decide Jack's appeals. A children's doctor is not qualified to determine whether a powered orthotic was Experimental and/or Investigational. These Plan violations by Quantum (and Meritain for failing to carry out its obligations) were egregious violations of the Plan document and procedures. Accordingly, the Court should apply the *de novo* standard of review to Jack's claim for benefits.

## II. QUANTUM MISCHARACTIZES THE PLAN'S PROCEDURAL REQUIREMENTS AND PROVISIONS

Quantum's Opposition contains numerous inaccurate statements and misinterpretations of the Plan's provisions. First, Quantum inaccurately states how medical claims for benefits are determined:

> The Plan sets out two distinct pathways: 1) the procedure for a separate "Care Coordination Process" (Doc. 84-1 at 8-12), which Quantum was retained to administer and is described above; and 2) the procedure to make claims for medical benefit coverage (id. at 59-62). Discretionary authority to determine medical benefit coverage and what should be paid for benefits was delegated to Defendant Meritain Health, Inc. ("Meritain") as the "Claims Fiduciary" (id. at 60, 75); however, Teva, as the Plan Administrator retains discretionary fiduciary authority over the Care Coordination process (id. at 8-12, 78) and has ultimate "final and binding" discretionary authority to determine whether "services, supplies, care and treatment" are "Experimental and/or Investigational" as a result of that process (id. at 74.)

(Quantum's Opposition ["Opp."], p. 2, line 22 – p. 3, line 3) The Plan does not provide "two distinct pathways" to make a claim for benefits. Rather, the Plan has distinct procedures depending on whether a claim is one of "four different types of claims: (1) pre-service claims; (2) urgent care claims; (3) concurrent care claims; and (4) post-service claims." (ECF 84-1, at p. 59) Pre-service claims are supposed to be submitted to the Care Coordination Process, but failure to do so will only result in a reduction in benefits. (ECF 84-1 at p. 8) (Page references to the Plan document are to the specific page of the document and not the ECF assigned page number.)

Quantum correctly states that discretionary authority was granted to Meritain to determine coverage. Meritain, as the Claims Fiduciary, is the only fiduciary with discretionary authority to finally determine claims. The Claims Fiduciary is defined as:

> Claims Fiduciary means the entity that has final discretionary authority to whether benefits will be paid under the Medical Benefit. The Claims Fiduciary is Meritain Health, Inc., except that Express Scripts is the Claims Fiduciary with respect to the prescription drug benefits offered under the Medical Benefit.

(ECF 84-1 at p.72) Likewise, Meritain is the only fiduciary with discretion to decide whether a requested service, treatment or equipment is Experimental or Investigational:

> Final determination of Experimental and/or Investigational, Medical Necessity and/or whether a proposed drug, device, medical treatment or procedure is

covered under the Medical Benefit will be made by and in the sole discretion of the Claims Fiduciary.

(ECF 84-1 at p. 74) Under the heading "Procedures for all Claims," the Plan contemplates that Meritain will decide a Pre-Service Claim:

> For a pre-service claim, the Claims Fiduciary will notify you of the Medical Benefit's benefit determination (whether adverse or not) within a reasonable period of time . . . the Claims Fiduciary may extend the time to notify you of the Medical Benefit's benefit determination for up to 15 days provided that the Claims Fiduciary notifies you within 15 days after the Claims Fiduciary receives the claim, of those special circumstances and of *when the Claims Fiduciary expects to make its decision*.

(ECF 84-1 at p. 59) (emphasis added.) In addition, under the heading "Manner and Content of Notice of Initial Adverse Determination," the Plan states, "[i]f the Claims Fiduciary denies a claim, it must provide to you in writing or by electronic communication" a number of items of information. (*Id.* at p. 60) Thus, the explicit terms of the Plan provide and contemplate that Meritain as the Claims Fiduciary is the only Party that has any discretion to make a determination of a claim, including whether a service, treatment or supply is Experimental and/or Investigational. Furthermore, the Claims Fiduciary is the only party that has discretionary authority to make a final determination whether benefits will be paid (except for prescription drug benefits). (ECF 84-1 at p. 74) Neither the Plan Administrator nor Quantum has any discretionary authority to decide a claim for benefits, including whether a treatment, service or supply is Experimental and/or Investigational.

Quantum falsely states that "Teva, as the Plan Administrator retains discretionary fiduciary authority over the Care Coordination process." Nowhere in the description of the Care Coordination Process does the Plan document state Teva as the Plan Administrator retains any discretionary authority over the Care Coordination Process. (ECF 84-1 at pp. 7-11)This is a manufactured statement by Quantum. Likewise, the Plan Administrator definition does not state that the Plan Administrator retains discretionary fiduciary authority over the Care Coordination Process. (ECF 84-1 at p. 77.) Rather, the Plan Administrator definition states that "[t]he Plan Sponsor *may delegate* certain fiduciary and other responsibility to the Plan Administrator." (*Id.*) There is no mention

PLAINTIFF'S REPLY TO DEFENDANT QUANTUM HEALTH, INC.'S OPPOSITION
TO MOTION TO ESTABLISH APPROPRIATE STANDARD OF REVIEW

of the Care Coordination Process or what responsibilities are delegated by the Plan Sponsor to the Plan Administrator, both of whom are Teva. Thus, Quantum's claim that Teva retains any discretion over the Care Coordination Process is erroneous and unfounded.

### A. Quantum Erroneously Claims the Plan Administrator Possesses Discretionary Authority to Decide Claims

Quantum makes a number of claims about the Plan Administrator having discretionary authority that have absolutely no support in the Plan document. Quantum cites to page 77 of the Plan document claiming both the Care Coordination Process and the determination of Experimental and/or Investigational "fall under the general umbrella of discretionary authority belonging to the Plan Administrator." (Opp., p. 4, lines 7-10). Again, nothing in the Plan document gives the Plan Administrator such authority. It appears that the citation to page 77 is to the definition of Plan Administrator, which merely states that the Plan Sponsor can delegate unspecified responsibilities to the Plan Administrator, both of whom are Teva. Because "sole discretion" to determine claims and whether Durable Medical Equipment is Experimental and/or Investigational under the Plan is granted to Meritain only, the Plan Administrator can have no such authority. (ECF 84-1 at p. 74)

Oddly, Quantum also cites to the Plan Administrator definition to claim erroneously that Teva "*may* then subsequently delegate duties to, *inter alia*, Quantum as the Care Coordinator, who would thus have the authority to review claims for experimental and/or investigational procedures and devices." (Opp., p. 4, lines 10-13) (emphasis added). This is nothing more than conjecture and speculation. Quantum cannot even state that the Plan Administrator did in fact make such a delegation because it never occurred. The Plan Administrator has no such authority because the Plan delegates that authority to Meritain and no one else.

///

///

### B. Quantum Violated Plan Provisions by Determining the Initial Claim and Internal Appeals

Quantum admits that it decided Jack's initial claim for benefits and both appeals. (Opp., page 4, lines 24-28; p. 5, lines 14-17; p. 6, lines 15-18). Quantum claims that it made the denials "on behalf of the Plan Sponsor." (*Id.*). Quantum does not have discretionary authority to make benefits determinations. Likewise, the Plan Administrator does not have authority or discretion to decide claims for benefits or appeals.

The Plan provides that "a review of an adverse determination" will be "conducted by an appropriate named fiduciary of the Plan who did not make the adverse determination that is the subject of the appeal . . ." (ECF 84-1 at p. 61) The provision of the Plan was violated because Quantum made the adverse determination and decided the subsequent appeals. Meritain was the only Party that had the authority to make such a determination, but it failed to act. There is no doubt that Meritain was supposed to conduct the internal review because the Plan provides that the after the claim is submitted to the IRO for an external review, the "Claims Fiduciary, based upon any new information received, *may reconsider its final internal adverse determination*." (ECF 84-1 at p. 65). Thus, the Plan language is explicit that the Claims Fiduciary makes the final internal adverse determination.

Another violation of the Plan provisions by Quantum occurred when "Quantum approved the claim for external review . . ." (Opp., p, 6, lines 21-22) The Plan provides that after the Claims Fiduciary receives a request for an external review, it "will complete a preliminary review" and notify the claimant whether the request is eligible. (ECF 84-1 at p. 64) "[I]f the request is eligible for external review, the Claims Fiduciary will assign an independent review organization (IRO) . . . to make a determination on the request for external review." (*Id.* at p. 65) However, Quantum made the eligibility determination and then assigned the external review to MCMC, LLC. (Opp., p. 6, lines 21-23). Quantum had no authority to determine eligibility for the external review or to

make the decision of which IRO to assign the determination of the external review.

### C. Quantum's Referral of Jack's Claim to AllMed Violated Plan Provisions

In its Opposition, Quantum, for the first time, revealed that it forwarded Jack's first and second level appeals to AllMed, an Independent Medical Reviewer, "for consideration." (Opp., p. 5, lines 4-17; p. 5, line 18 to p. 6, line 18.) Neither letter denying Jack's appeals informed Jack that AllMed had been retained to decide his appeal. (See Exhibits C and E attached to Declaration of Dr. Brandon Green, ECF Nos. 84-5 and 84-7) The use of AllMed constituted a number of violations of the Plan.

Where, as here, the initial adverse determination was based on a determination the MyoPro was Experimental and/or Investigational, the appeal procedures require the "appropriate named fiduciary of the Plan [to] consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment before making a decision on review of any adverse determination . . ." (ECF 84-1 at p. 61) In both appeals, AllMed used pediatricians to conduct the reviews. (See Exhibits A and B attached to Opposition) Nothing contained in either AllMed review demonstrates that the pediatricians had any expertise, training or experience with rehabilitative therapies such as the MyoPro. Use of a pediatrician is no different than use of a general practitioner or family medical doctor, none of which are qualified to evaluate a myoelectric elbow-wrist orthosis, such as the MyoPro. At a minimum, the Plan required a consultation with a physician who had expertise in rehabilitative medicine and myoelectric orthotics, not a child's doctor.

Next, the Plan was required to "identify any medical or vocational experts whose advice is obtained" in connection with the appeal, "without regard to whether the advice is relied upon in making the adverse determination on review." (ECF 84-1 at p. 61) Nowhere in either letter denying Jack's appeals did Quantum identify the medical expert whose advice was consulted. Quantum merely stated that the appeal was "forwarded to an independent Medical Reviewer of like specialty for consideration." (ECF 84-5 at p.

1) Had Quantum informed Jack that it had relied on the advice of a pediatrician, he could have addressed this fact in his subsequent appeal.

Lastly, the Plan requires that "all claims [be] adjudicated in a manner designed to ensure the independence and impartiality of the persons involved in making the decisions." (ECF 84-5 at p. 61) Based on the instruction given to the two AllMed reviewers, there is no doubt that the reviewers were neither independent nor impartial. The first question posed to each reviewer asked whether the MyoPro was considered experimental according to Aetna Clinical Policy Bulletin 0778. Because the Aetna policy states that Aetna considers the MyoPro experimental, both reviewers answered the question in the affirmative. Neither AllMed Review can be considered impartial or independent when the reviewers are instructed to follow an insurance company's policy bulletin. It is unclear why Aetna's policy was even required to be evaluated. There is nothing in the Plan provisions that requires the Plan to adopt Aetna's policy bulletins. Thus, both reviews violated the Plan by failing to be an independent evaluation of whether the MyoPro is experimental instead of responding to a loaded question as to whether Aetna had predetermined the MyoPro is experimental.

### III. **QUANTUM ERRONEOUSLY ASSERTS JACK'S CLAIMS WERE PROPERLY EVALUATED BY THE CARE COORDINATION PROCESS AND THE DISCRETION OF THE PLAN ADMINISTRATOR**

"When a plan does not confer discretion on the administrator 'to determine eligibility for benefits or to construe the terms of the plan,' a court must review the denial of benefits *de novo*." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006), quoting F*irestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, (1989). Furthermore, there is no exercise of discretion when the party to whom such authority is granted does not act. See *Nelson v. EG & G Energy Measurements Group, Inc.*, 37 F.3d 1384, 1389 (9th Cir. 1994) It is well established that "when the benefits decision 'is made by a body, other than the one authorized by the procedures set forth in a benefits plan,' federal courts review the benefits decision *de novo*." *Shelby County Health Care*

*Corp. v. Majestic Star Casino,* 581 F.3d 355, 365 (6th Cir. 2009). Neither Quantum nor the Plan Administrator had discretion to make a benefits decision.

Quantum's argument that the "Plan confers discretionary authority to the Plan Administrator" is a misstatement and misinterpretation of the Plan provisions. (Opp., p. 7, lines 17-20) Nowhere in the Plan is there any grant of discretionary authority the Plan Administrator. The only grant of discretionary authority is to Meritain, the Claims Fiduciary. (ECF 84-1 at pp. 72 and 74)

Quantum's contention that it "was the appropriate entity to issue the adverse decisions" has no support in the Plan. (Opp., p. 7, lines 25-26) Likewise, Quantum's contention that it was within Quantum's purview to review and issue denials of Jack's two appeals is misplaced. Quantum's only function in the Plan was to "help Covered Persons obtain quality healthcare and services" through the Care Coordination process. (ECF 84-1 at p. 7). The Plan was explicit that Quantum had no authority to make any benefit decisions, much less make a determination whether the MyoPro was Experimental and/or Investigational under the terms of the Plan. Quantum's authority was extremely limited.

The Plan provides that Quantum would gather information, review the request and then it could only make "*a recommendation to the Plan Administrator* whether the request should be approved, denied, or allowed as an exception." (*Id.* at p. 8) (emphasis added) If Quantum can only make a recommendation then it cannot render a binding determination. Yet, Quantum did make a binding determination by denying Jack's claim for benefits. Quantum then continued to violate the Plan provisions by reviewing and denying both of Jack's appeals when a different named fiduciary was required to review the claim for benefits. Moreover, the same Quantum Appeals Coordinator, Sarah Bantner, denied both the first and second level appeals when such decisions cannot be rendered by the same person. (ECF 84-1 at p. 61) Quantum's consultation with an outside pediatrician does not save Quantum from its violation of these procedures.

///

8
PLAINTIFF'S REPLY TO DEFENDANT QUANTUM HEALTH, INC.'S OPPOSITION
TO MOTION TO ESTABLISH APPROPRIATE STANDARD OF REVIEW

## IV. TEVA'S CONFLICT OF INTEREST COUPLED WITH THE EGREGIOUS VIOLATIONS OF PLAN PROCEDURES DICTATE *DE NOVO* REVIEW MUST BE APPLIED

The Plan is purportedly self-insured by Teva, who is also the Plan Sponsor and Plan Administrator. Quantum contends there is no conflict of interest because (1) there is no evidence of malice, self-dealing or inconsistent claims granting history and (2) Teva engaged a third party, Quantum, in its decision-making process. (Opposition, p. 9, lines 11-25)

When a conflict of interest exists, as here with Teva as both the Plan Administrator and the Plan Sponsor, the Court must evaluate the extent of this conflict of interest. *Abatie*, 458 F.3d at 967. Egregious violations of Plan provisions can dictate that *de novo* review should be applied *Id.* at 968.

Here, the Plan violations are egregious and significant. Neither Quantum nor the Plan Administrator were granted discretion to determine benefit claims. Yet, Quantum decided the initial claim and subsequent appeals. Meritain, on the other hand, as the Claims Fiduciary, had sole discretion to finally determine Jack's claim, but played no part in the determination. There is also evidence that the reviewers failure to adequately review the materials provided by Jack and did not conduct adequately an investigation of the facts. The reviewers merely deferred to the Aetna Policy Bulletin. Because of these egregious violations, *de novo* review must apply.

///
///
///
///
///
///
///
///

## V. CONCLUSION

Based on the foregoing, the *de novo* standard of review should be applied because Quantum did not have discretionary authority to decide Jack's claim for benefits. Meritain was the only Party that had discretionary authority to determine Jack's claim and it did not exercise that discretion.

Respectfully submitted,

DATED: March 30, 2020        **DAVIS LAW GROUP, PLC**

By: /s/ D. Jason Davis
D. Jason Davis
Attorneys for Plaintiff John Herzfeld

# CERTIFICATE OF SERVICE

I certify that on March 30, 2020, I electronically filed the foregoing **PLAINTIFF'S REPLY TO DEFENDANT QUANTUM HEALTH, INC.'S OPPOSITION TO MOTION TO ESTABLISH APPROPRIATE STANDARD OF REVIEW** with the Clerk of the Court for the United States District Court, Central District of California, by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

By: /s/ D. Jason Davis
D. Jason Davis
Attorneys for Plaintiff