D. Jason Davis (State Bar No. 193225)
DAVIS LAW GROUP, PLC
401 Wilshire Blvd., 12th Floor
Santa Monica, CA 90401
Telephone: (424) 256-0070
Facsimile: (424) 256-7950
jdavis@dlglawcorp.com

Attorneys for Plaintiff John Herzfeld

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOHN HERZFELD, an individual,

Plaintiff,

vs.

TEVA PHARMACEUTICALS USA, INC. OMNIBUS WELFARE PLAN; QUANTUM HEALTH, INC. WHICH WILL DO BUSINESS IN CALIFORNIA AS COORDINATED HEALTHCARE; MERITAIN HEALTH, INC; MCMC, LLC; and AETNA LIFE INSURANCE CO.

Defendants.

CASE NO.: 2:18-CV-09784-ODW-SS

**PLAINTIFF'S REPLY TO DEFENDANT TEVA PHARMACEUTICALS USA, INC. OMNIBUS WELFARE PLAN'S OPPOSITION TO MOTION TO ESTABLISH APPROPRIATE STANDARD OF REVIEW**

Date: April 27, 2020
Time: 1:30 p.m.
Ctrm: 5D

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Teva Pharmaceuticals USA, Inc. Omnibus Welfare Benefit Plan's (the "Plan") interpretation of the relevant provisions of the Medical Benefit Section of the Plan (the "Medical Benefit") violates basic contract interpretation principals with regard to ERISA governed employee benefit plans. The Plan claims that the Plan Administrator has "ultimate discretionary authority" to determine whether a requested service or device is Experimental and/or Investigational. Yet, the evidence shows that Defendant Quantum Health, Inc. ("Quantum"), an entity with no discretionary authority, decided Plaintiff John Herzfeld's ("Jack") initial claim for benefits, both of his appeals and then selected the Independent Review Organization ("IRO") to decide Jack's external review. Quantum had no authority to take any of these actions.

The Plan attempts to maneuver around these violations of the Medical Benefit by claiming that Quantum acted "in conjunction with" the Plan Administrator and that the Plan Administrator made the determination. However, the evidence is uncontroverted that the Plan Administrator had no discretion to decide Jack's claim for benefits and, even if it did, it did not exercise that discretion. It is also uncontroverted that Meritain Health, Inc, as the Claims Fiduciary, was the only fiduciary that was vested with the discretionary authority to make a final determination of whether the Myomo, Inc. MyoPro was Experimental and/or Investigational and whether Jack's claim for benefits should be approved or denied;

Because Meritain did not exercise its discretionary authority to make a final determination of Jack's claim, the Court must apply the *de novo* standard of review. Quantum had no authority to approve or deny Jack's claim for benefits. Furthermore, these egregious violations of the Medical Benefit coupled with Teva's Pharmaceuticals inherent conflict of interest as the payer of claims and the Plan Administrator dictate that a heightened standard of scrutiny should be applied.

///

## II. THE PLAN TAKES NUMEROUS LIBERTIES BY READING TERMS INTO THE PLAN PROVISIONS THAT DO NOT EXIST

The Plan misinterprets a number of provisions by erroneously claiming two separate claims procedures exist, as well as arguing the Medical Benefit grants the Plan Administrator discretionary authority that does not exist. Furthermore, nothing in the Medical Benefit designates Quantum as the fiduciary to make initial benefit determinations or conduct internal appeals.

In adjudicating ERISA plans, courts apply "traditional rules of contract interpretation as long as they are consistent with federal labor policies." *Management Aeronautical Indus. Dist. Lodge 91 of Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Techs. Corp., Pratt & Whitney*, 230 F.3d 569, 576 (2d Cir. 2000). Furthermore, the contract should be read in light of the underlying goals of ERISA. (*Id.*) Courts will employ traditional common law principles of contract interpretation to resolve the ambiguities in plan provisions. *Citizens Ins. Co. of Am. v. MidMichigan Health ConnectCare Network Plan*, 449 F.3d 688, 694 (6th Cir. 2006). Courts "must construe ambiguities in an ERISA plan against the drafter and in favor of the insured." *Barnes v. Independent Auto. Dealers of Cal.*, 64 F.3d 1389, 1393 (9th Cir.1995).

### A. The Care Coordination Process Does Not Grant Authority to Quantum or the Plan Administrator to Determine Claims.

The Plan claims "the Medical Benefit sets out both the procedure to make claims for medical benefit coverage (ECF 84-1 at 59-62 [page references are to the specific page of the Medical Benefit]), and the procedure for a separate Care Coordination process (see id. at 8-12)." (Plan Opposition ["Opp."] p. 3, lines 4-6) The Plan further claims that these are "two distinct processes." (Id. at lines 14-16). The Plan's assessment of the claims procedure is misguided. There is a single claims procedure for making an initial claim for benefits that is outlined in the section entitled, "Claims Procedures." (ECF 84-1 at pp. 58-61). Under the subheading, "Procedures for all Claims," the Medical Benefit requires that "[t]o receive benefits under the Medical

Benefit, the claimant . . . must follow the procedures outlined in this section." In addition, it states that "[t]here are four different types of claims: (1) pre-service claims; (2) urgent care claims; (3) concurrent care claims; and (4) post-service claims." (Id.at p. 59.) There is a separate claims procedure for each type of claim. (Id.).

A pre-service claim for benefits is one that requires approval before "obtaining the health care in question." (ECF 84-1 at p. 59.) "For a pre-service claim, the Claims Fiduciary will notify you of the Medical Benefit's benefit determination (whether adverse or not) within a reasonable period of time . . ." (Id.). If the Claims Fiduciary needs additional time to render its decision for a pre-service claim, the Claims Fiduciary must notify the claimant within 15 days of receiving the claim "when the Claims Fiduciary *expects to make its decision.*" (Id.) (emphasis added). Thus, the Medical Benefit provides that the Claims Fiduciary and no one else has the authority whether to approve a pre-service claim.

The Care Coordination process is used to initially assess certain claims, including those that require "pre-notification," otherwise known as "pre-service" claims (ECF 84-1 at p. 8) Thus, the Care Coordination process is used as an initial evaluation for claims that require preapproval ("pre-service claims"), including Durable Medical Equipment or orthotics that cost more than $500. (Id.). Contrary to the Plan's claim, the Care Coordination is not a requirement, however, the Plan requires its use "[t]o be covered at the highest level of benefit." (Id.). Failure to use the Care Coordination Process can result in a penalty or a reduction in benefits. (Id.)

The Medical Benefit outlines a "Utilization Review" for pre-service claims for benefits. "The Care Coordinators will review each pre-notification request to evaluate whether" it meets "utilization criteria." (ECF 84-1 at p. 8) The utilization criteria is not set forth in the Medical Benefit. "If a pre-notification request does not meet these criteria, a medical director of Quantum Health will review the request." (Id.) "He or she will then provide, through the Care Coordinators, a recommendation to the Plan Administrator whether the request should be approved, denied, or allowed as an

exception." (Id.)

The Care Coordination Process section of the Medical Benefit does not state that the Plan Administrator has any discretionary authority to make a decision. The Medical Benefit states that the Plan Administrator will receive a recommendation from Quantum, but the Plan makes no grant of authority to the Plan Administrator to act on the recommendation. The reason that the Medical Benefit contains no authority for the Plan Administrator to act on the recommendation is because any "final determination" is to be made "by and in the sole discretion of the Claims Fiduciary." (ECF 84-1 at p. 74)

The Plan erroneously claims that by Quantum transmitting a recommendation to the Plan Administrator, "[t]he Medical Benefit appoints Defendant Quantum to administer the Care Coordination process in conjunction with the Plan Administrator." (ECF 84-1 at 7-11.) (Opp., p. 4, lines 8-10; p. 7, lines 7-14) It is unclear what the Plan means by "in conjunction with." Because Quantum makes a "recommendation" to the Plan Administrator whether the pre-service claim meets some unspecified "utilization criteria," it does not mean that Quantum has any discretionary authority to approve or deny the pre-service claim. In addition, by transmitting a recommendation to the Plan Administrator, the Plan Administrator is not magically conferred final discretionary authority or *any* discretionary authority to make a benefits determination of a claim. The Claim Procedures and Definition sections of the Medical Benefit make clear that Meritain is the only fiduciary that has any discretionary authority to make a final determination of a benefits claim. (ECF 84-1 at p. 59 ["when the Claims Fiduciary expects to make its decision"]; see also, ECF 84-1 p. 60 ("If the Claims Fiduciary denies a claim"]) The Claims Procedure section contemplates that decisions regarding approval or denial of claims is within the purview of the Claims Fiduciary and no one else. The Plan's claim that the Plan Administrator has discretionary authority is an erroneous claim that the Plan attempts to read into the Medical Benefit.

The Plan's contention that Meritain only makes "medical benefit coverage" determinations while "the ultimate discretionary authority for decisions made in the Care

Coordination process—including in particular the determination as to whether a device or procedure is 'Experimental and/or Investigational'—remains with the Plan Administrator" is a misreading of the Medical Benefit terms. (Opp., p. 7, lines 2-6) The Medical Benefit is explicit that only Meritain has any discretionary authority. Meritain, as the Claims Fiduciary, is "the entity that has final discretionary authority to whether benefits will be paid under the Medical Benefit." (Id. at p. 72). In addition, the Medical Benefit states that "[f]inal determination" whether a device such as the MyoPro is "Experimental and/or Investigational," whether a requested service constitutes a "Medical Necessity" or whether the Plan will pay for a treatment, service or device "will be made by and in the sole discretion of the Claims Fiduciary." (Id. at 74)

**B. Final Determination of Experimental and/or Investigational is Determined by Meritain**

The Plan claims that "[u]nder the terms of the Plan, the Plan Administrator (i.e., Teva) has the ultimate discretionary authority to make a 'final and binding' determination as to whether services, supplies, care and treatment are 'Experimental and/or Investigational' as defined by the Medical Benefit. (Id. at 74.)" (Opp., p. 2, line 27 to p. 3, line 2; p. 4, lines 3-7). The Plan also claims that the Plan Administrator has "discretionary authority" over the Care Coordination process. (Opp., p. 4, lines 3-4) The Medical Benefit makes no mention of conferring "ultimate discretionary" authority to the Plan Administrator. The fact that the "Plan Administrator" has the ability to make a binding determination whether services, supplies, care and treatment are "Experimental and/or Investigational" does not imply that it has the discretionary authority to decide a benefits claim that is given to the Claims Fiduciary. Furthermore, the claim that the determination of Experimental and/or Investigational is conducted through the Care Coordination process is a false statement. (See Opp., p. 6, lines 17-24). The Care Coordination process makes no mention of making a determination whether a service, supplies, or treatment are Experimental and/or Investigational.

Rather, the Definition section explains how an Experimental and/or

Investigational determination is made. The Medical Benefit states that the "Plan must make an independent evaluation of the standings of each specific technology as to whether such technology is Experimental and/or Investigational or non-Experimental and/or Investigational." (ECF 84-1 at p. 73). The Medical Benefit does not state that Quantum will make such a determination, nor does it state that the determination is made "in conjunction" with the Care Coordination process.

The Medical Benefit is clear that "final determination" of the following are made "by and in the sole discretion" of the Claims Fiduciary: (1) Experimental and Investigational; (2) Medical Necessity; and/or (3) "whether a proposed drug, device, medical treatment or procedure is covered the Medical Benefit." (ECF 84-1, p. 74) It cannot be assumed that the Plan Administrator has authority to make determinations that can take precedence over the Claims Administrator when the Medical Benefit explicitly vests "final" determinations with the Claims Fiduciary, not the Plan Administrator. At a minimum, there is an ambiguity regarding whether the Plan Administrator or the Claims Fiduciary makes the determination whether a treatment or device is Experimental and/or Investigational. Here, any such ambiguity would be resolved against the Plan as the drafter. *Barnes*, 64 F.3d at 1393.

**C. <u>Quantum Was Not Authorized to Decide Jack's Appeals</u>**

The Plan misunderstands the requirements of the internal review procedure set forth in the Medical Benefit. The Plan argues:

> initial appeal of an adverse decision is made to Quantum (id. at 63), during which process the 'appropriate named fiduciary of the Plan' – which for the Care Coordination process is clearly identified by the Plan to be Teva, the Plan Administrator, as assisted by Quantum – consults with an experienced medical professional to review the decision (id. at 62).

(Opp, p. 4, line 25 to p. 5, line 2) This statement is nonsensical. The Plan is trying to bootstrap Quantum's denial of benefits as being an official decision made by the Plan, which it did not make.

The internal review process is set forth in pages 61-64 of the Medical Benefit. The Medical Benefit does not state that Quantum conducts the internal review. Rather, a

request for an internal review is submitted by mailing the request to Quantum. (ECF 84-1 at p. 62.) The first level appeal is "conducted by an appropriate named fiduciary of the Plan *who did not make the adverse determination* that is the subject of the appeal." (ECF 84-1 at p. 61).

As the Plan admits, Quantum conducted both the initial determination and the first level appeal. (Opp., p. 6, lines 1-4; ECF 84-5). Quantum also conducted the second level appeal and used the same reviewer, Sarah Bantner, for both appeals. (ECF 84-5 and 84-7) Despite the fact that each appeal should have used a different named fiduciary, the Plan allowed Quantum, who was not authorized to conduct the appeal in the first place, to conduct both appeals using the same reviewer.

Quantum did not have any discretionary authority to render a final determination, which should have been made by Meritain. (ECF 84-1 at p. 74) The Medical Benefit is explicit that the Claims Fiduciary makes the final determination of an appeal as evidenced in the procedure for an external review:

> Any such additional information received by the IRO will be forwarded on and shared with the Claims Fiduciary. The Claims Fiduciary, based upon any new information received, ***may reconsider its final internal adverse determination***. (ECF 84-1 at p. 65) (emphasis added)

Lastly, further evidence of the Plan's failure to follow the written procedures of the Medical Benefit is illustrated by the fact that while a request for an external review is mailed to Quantum, it is Meritain who is supposed to determine whether the criteria for an external review are met and to then select the IRO to conduct the external review. Quantum instead of Meritain made those decisions. (ECF 84-9)

## III. MERITAIN'S FAILURE TO EXERCISE ITS DISCRETIONARY AUTHORITY MEANS *DE NOVO* REVIEW APPLIES

"When a plan does not confer discretion on the administrator 'to determine eligibility for benefits or to construe the terms of the plan,' a court must review the denial of benefits *de novo*." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006), quoting Fi*restone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, (1989).

Furthermore, when a benefit decision is rendered by a party other than the one vested with the discretionary authority to do so, a court will apply the *de novo* standard of review. *Nelson v. EG & G Energy Measurements Group, Inc.*, 37 F.3d 1384, 1389 (9th Cir. 1994). Here, Meritain was the only fiduciary with authority to make any determinations. Final determination whether the MyoPro was Experimental and/or Investigational was to be made "by and in the sole discretion" of Meritain. (ECF 84-1 at p. 74) Meritain admits by way of its Non-Opposition that it did not make any determinations. Thus, there was no exercise of discretion with regard to the denial of Jack's claim for benefits.

The Plan argues "by providing that the Plan Administrator has the ability to make a 'final and binding' determination . . .through the Care Coordination process, the Medical Benefit confers just such discretionary authority." (Opp., p. 6, lines 17-24) First, there is no evidence the Plan Administrator ever made a determination whether the MyoPro was "Experimental and/or Investigation." In fact, the Plan admits in its Opposition that Leslie Roth, a Quantum Nurse Care Coordinator, made the initial determination. (Opp., p. 5, lines 11-13) The appeals were then determined by Quantum's Appeals Coordinator, Sarah Bantner. (ECF 84-5 and 84-7). Thus, the Plan Administrator did not exercise any discretionary authority.

Second, a final determination could only be made by Meritain. (ECF 84-1 at p. 74) Thus, Meritain was the only entity that had the discretionary authority to finally decide Jack's claim for benefits. The Plan's argument that there is a segregated process between the Care Coordination process and a claim for what the Plan terms "medical benefit coverage" is a misreading of the Plan. Nowhere in the Medical Benefit does it state Meritain is only responsible for determining "medical benefit coverage." The phrase exists nowhere in the document.

Even if the Court accepted the Plan's argument that the Plan Administrator had limited discretionary authority to determine whether the MyoPro was considered Experimental and/or Investigational under the terms of the Medical Benefit, there is no

evidence that the Plan Administrator ever exercised this authority. All determinations were made by Quantum, not the Plan Administrator. The Plan cannot rectify this procedural violation by claiming Quantum's decision was done "in conjunction" with the Plan Administrator or that it was assisted by Quantum. No such evidence exists.

## IV. TEVA'S CONFLICT OF INTEREST DICTATES A HEIGHTENED STANDARD OF SCRUTINY SHOULD BE APPLIED

Teva is both the Plan Sponsor and Plan Administrator. As a purportedly self-funded Plan, Teva would be financially responsible for payment of benefits under the Medical Benefit section of the Medical Benefit. As a result, a conflict of interest necessarily exists because Teva has an incentive to save money by not paying claims. The Ninth Circuit has recognized this conflict of interest and dictated that such conflict of interest must be considered when determining the applicable standard of review. *Abatie*, 458 F.3d at 966-967.

The Plan claims any conflict of interest is abated by the fact that it used Quantum to conduct the Care Coordination process and internal appeals, who in turn consulted with AllMed when the appeals were decided. (Opp., p. 12, lines 16-21) The numerous procedural violations coupled with this conflict of interest dictate a heightened standard of review should apply.

Quantum was not granted discretionary authority to determine whether a treatment or device was Experimental and/or Investigational. Quantum was not authorized to decide whether a claim for benefits should be approved or denied. Yet, Quantum administered the entire claims process, including denying the initial claim, denying both appeals and selecting the IRO to conduct the external review. Quantum had no authority to take any of these actions and the Plan and Meritain's failure to prevent this from happening resulted in numerous violations and prevented Jack from receiving a full and fair review.

///

///

## V. THE MEDICAL BENEFIT'S STOP-LOSS INSURANCE SHOULD SUBJECT THE PLAN TO CAL. INSURANCE CODE § 10110.6

The Plan contends that the discretionary clause in the Medical Benefit is not voided because Insurance Code § 10110.6 is preempted and does not apply to health insurance. In addition, the Plan argues that stop-loss insurance does not convert a self-funded plan to an insured plan.

The ban on discretionary provisions set forth in Cal. Ins. Code § 10110.6 applies to health insurance. *Mahlon D. v. Cigna Health and Life Insurance Company*, 291 F.Supp.3d 1029, 1033 (N.D. Cal. 2018); see also Cal. Ins. Code § 106(b). The Plan contention that its stop-loss insurance does not apply to the Medical Benefit is inaccurate. The Medical Benefit states that if alternative treatment is warranted, "the Care Coordinators will submit this plan to the Claims Fiduciary and/or Stop-Loss Carrier for prior review and approval. Thus, the Medical Benefit does have stop-loss insurance and it is distinguishable from the stop-loss insurance in *United Food & Commercial Workers & Employers Arizona Health & Welfare Tr. v. Pacyga,* 801. F.2d 1157, 1161-1162 (9th Cir. 1986) because here the Stop-Loss Insurance decides whether to approve alternative treatment. The Plan is in fact insured.

## VI. CONCLUSION

Based on the foregoing, the *de novo* standard of review should be applied because Quantum did not have discretionary authority to decide Jack's claim for benefits. Meritain was the only party that had final discretionary authority to determine Jack's claim and it did not exercise that discretion.

DATED: March 30, 2020

**DAVIS LAW GROUP, PLC**

By: /s/ D. Jason Davis
D. Jason Davis
Attorneys for Plaintiff John Herzfeld

**CERTIFICATE OF SERVICE**

I certify that on March 30, 2020, I electronically filed the foregoing **PLAINTIFF'S REPLY TO DEFENDANT TEVA PHARMACEUTICALS USA, INC. OMNIBUS WELFARE PLAN'S OPPOSITION TO MOTION TO ESTABLISH APPROPRIATE STANDARD OF REVIEW** with the Clerk of the Court for the United States District Court, Central District of California, by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

By: /s/ D. Jason Davis
D. Jason Davis
Attorneys for Plaintiff